128 P.3d 833

Dean Kawailani CHUNG,
Plaintiff–Appellant,

v.

McCABE HAMILTON & RENNY COM-
PANY, LTD., a Hawai'i corporation,
Kyle Soares, an individual, John A.
Dias, an individual, Henry R.K. Lee, an
individual, Dwight Shaw, an individual,
Robert T. Guard, an individual, Kraig
M. Kennedy, an individual, Bob M. Bee,
an individual, and Matt B. Guard, an
individual, Kini KalaiwaFA, AN INDI-
VIDUAL, ANDREW L. PEPPER, AN
INDIVIDUAL, MARR HIPP JONES &
PEPPER, A HAWAI'I PARTNERSHIP,
DEFENDANTS–APPELLEES,

and

Does 1–50, Defendants,

and

Related Counterclaims.

No. 25458.

Supreme Court of Hawai'i.

Feb. 17, 2006.

As Corrected Feb. 21 and March 1, 2006.

Dane L. Miller and Wilma Sur, Honolulu (Miller Tokuyama Kralik & Sur LLP), on the briefs, for plaintiff-appellant.

John T. Komeiji, Honolulu, Michael A. Lorusso and Brian A. Kang (Watanabe Ing Kawashima & Komeiji LLP), on the briefs, for defendants-appellees.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, JJ. and Circuit Judge AUGUST, in Place of DUFFY, J., Recused.

Opinion of the Court by ACOBA, J.

We hold that (1) Defendants–Appellees Marr, Hipp, Jones, & Pepper (MHJP) and Andrew L. Pepper [collectively, Appellees], as attorneys for earlier and dismissed employer-defendants, may raise, as agents of their employers, the doctrine of preemption under the National Labor Relations Act (NLRA) on a summary judgment motion; (2) the claims of Plaintiff–Appellant Dean Kawailani Chung (Appellant) against Appellees for abuse of process and malicious prosecution, as well as the derivative claims of conspiracy and aiding and abetting related to these torts, are preempted under this court's holding in *Gouveia v. Napili–Kai, Ltd.,* 65 Haw. 189, 649 P.2d 1119 (1982); (3) Appellant's claims for intentional infliction of emotional distress (IIED) and false light invasion of privacy are not preempted under this court's holding in *Briggs v. Hotel Corp. of the Pac., Inc.,* 73 Haw. 276, 831 P.2d 1335 (1992) and *Gouveia;* (4) Appellant's claim against Appellees for defamation and the derivative claims of conspiracy and aiding and abetting for this tort are not preempted under *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966); and (5) Appellant's argument that the application of the preemption doctrine violates his Seventh Amendment right to a jury

trial was not properly raised and is therefore waived. Applying these holdings, we affirm in part and and vacate in part the October 23, 2002 final judgment of the circuit court of the first circuit[1] (the court) granting Appellees' motion for summary judgment and dismissing Appellant's consolidated amended complaint (the CAC) for lack of subject matter jurisdiction (the order), and remand this case for further proceedings in accordance with this opinion.

## I.

The decision of the Intermediate Court of Appeals (the ICA), *McCabe Hamilton & Renny Co. v. Chung*, 98 Hawai'i 107, 43 P.3d 244 (App.2002) [hereinafter *McCabe*], provides a detailed description of the underlying dispute between Appellant and his co-workers at McCabe Hamilton & Renny, Co. (McCabe). Only the following condensed statement of the factual background is pertinent to this appeal.

### A.

On January 7, 2000, following a confrontation between Appellant and co-workers Kyle Soares (Soares) and John Dias (Dias), McCabe, Soares, and Dias [collectively, the first TRO petitioners] filed an *ex parte* motion for a TRO in a special proceeding, S.P. No. 00–1–0010 (first TRO action). The first TRO petitioners were represented by Appellees. The court issued four TROs against Appellant and converted the special proceeding into a regular civil case. While the first TRO action was pending, McCabe fired Appellant.

On February 8, 2000, Appellant filed a complaint in Civil No. 00–01–0444 (case 0444) against McCabe, four of its executives—Robert T. Guard, Kraig M. Kennedy, Bob M. Bee, and Matt B. Guard—and four of Appellant's co-workers—Soares, Dias, Henry R.K. Lee, and Dwight Shaw [collectively, the first McCabe defendants], claiming, *inter alia*, abuse of process and defamation.

On March 14, 2000, McCabe, Soares, Dias, and Earl Kini Kalaiwa'a (Kalaiwa'a) [collectively, the second TRO petitioners] filed a complaint and a renewed *ex parte* motion for TRO (second TRO action) against Appellant, the latter being granted by the court. On March 23, 2000, an evidentiary hearing was held on the second TRO action and the second TRO petitioners' motion for a preliminary injunction. The court denied the motion and dismissed the action without prejudice on March 29, 2000.

On June 2, 2000, Appellant filed a second lawsuit in Civil No. 00–01–1771 (case 1771) against McCabe, Soares, Dias, and Kalaiwa'a [collectively, the second McCabe defendants], asserting wrongful termination in violation of Hawai'i Revised Statutes (HRS) § 378–2 (Supp.1999), malicious prosecution of the second TRO action, abuse of process, and related claims.

On June 6, 2000, the International Longshore and Warehouse Union, Local 142, AFL–CIO (the ILWU) filed, on behalf of Appellant, a charge against McCabe with the National Labor Relations Board (NLRB).

The NLRB charge alleged that the state court actions brought against Appellant violated Section 8(a)(1),[2] 29 U.S.C. § 158, of the National Labor Relations Act (NLRA) because McCabe filed two lawsuits in retaliation for a labor dispute initiated by Appellant while he was engaged in activities protected by Section 7,[3] 29 U.S.C. § 157, of the NLRA. Because McCabe lost its complaint on the

---

1. The Honorable Gary W.B. Chang presided.

2. Section 8(a)(1) of the National Labor Relations Act (NLRA) states that "[i]t shall be an unfair labor practice for an employer (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]"

3. Section 7 of the NLRA states:
 *Employees shall have the right to self-organization, to form, join, or assist labor organiza-* *tions, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection,* and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

merits and voluntarily sought a dismissal, the ILWU requested that the NLRB find that the filing of the lawsuits against Appellant constituted an unfair labor practice. The ILWU also requested that McCabe be required to reimburse the Union's and Appellant's attorneys their fees and costs incurred as a result of the two lawsuits. It appears that the NLRB charge was withdrawn.[4]

### B.

The defendants removed both of Appellant's state cases, case 0444 and case 1771, to federal court, asserting federal jurisdiction pursuant to section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994).[5] By order dated April 5, 2001, the United States District Court for the District of Hawai'i (the district court)[6] granted, in part, the first and second McCabe defendants' motions for summary judgment. Both cases were decided under LMRA section 301, 29 U.S.C. § 185, referred to as "section 301 preemption."

According to the district court, LMRA section 301 "preempt[s] state law claims between an employee and employer when those claims require the court to interpret the terms of collective bargaining agreements." It was ruled that Appellant's claim for tortious interference with contractual relations was preempted under section 301. Consequently, the district court dismissed the claim. The district court determined that the claims for IIED, conspiracy, and aiding and abetting were preempted in part, and dismissed the claims with some reservation. However, it was decided that Appellant's claims for abuse of process, defamation, false light invasion of privacy, violation of public policy in connection with a wrongful termination, and punitive damages were *not* preempted under section 301. These claims were remanded to state court.

█ The district court's decision was based entirely upon section 301 preemption. According to the district court, the McCabe defendants' alternative argument, that is, that Appellant's claims were preempted under the doctrine announced in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), was not addressed because *Garmon* did "not provide a basis for subject matter jurisdiction in the federal courts."[7] Accordingly, the district court deferred to the "state court [to] properly address [d]efendants' arguments with respect to ... *Garmon* preemption."[8]

### II.

Upon remand to the state court, Appellant filed a motion to file the CAC. The court granted the motion and on May 8, 2001, Appellant filed the CAC, asserting abuse of process, malicious prosecution, defamation, false light invasion of privacy, IIED, conspiracy, aiding and abetting one another in the aforesaid causes of action, violations of HRS § 378–2, negligent supervision, negligent infliction of emotional distress, and negligence. Appellant also joined Appellees as new parties.

On June 5, 2001, Appellees filed a motion to dismiss the CAC for lack of jurisdiction or, in the alternative, for summary judgment, arguing that (1) Appellant's anti-union theory involved protected rights under section 7 of the NLRA, 29 U.S.C. § 157, and unfair labor

---

4. On August 18, 2005, this court ordered the parties to file supplemental briefs indicating the status of any proceedings before the National Labor Relations Board (NLRB) concerning the instant case. Appellant responded that he was unaware of any related proceedings before the NLRB. Appellees provided a similar response.

5. United States District Court for the District of Hawai'i Chief Judge Ezra consolidated the cases due to "common questions of law and fact."

6. The Honorable Helen Gillmor presided.

7. The district court relied on *Ethridge v. Harbor House Rest.*, 861 F.2d 1389 (9th Cir.1988).

8. Under *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 244, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), when a state seeks to regulate activities that are either protected under § 7 or constitute an unfair labor practice under § 8 of the NLRA, state jurisdiction must yield. To allow the states to regulate this conduct is likely to result in a conflict between Congress's regulatory power and state imposed regulation and could potentially frustrate Congress's purposes. *Id.*

practices under section 8 of the NLRA, 29 U.S.C. § 158, (2) because Appellant alleged Appellees committed an unfair labor practice, his remedies lay with the NLRB and not the court, and (3) *Garmon* preemption applied to Appellees as "agents" of Appellant's employer, McCabe.

At the July 20, 2001 hearing on the motion,[9] the court asked Appellant's attorney if "union busting [was] behind the entire series of transactions and actions brought against [Appellant] that gave rise to this particular lawsuit[.]" Counsel for Appellant responded that on February 8, 2000, the date of Appellant's original complaint, Appellant was unaware of incidents that would suggest that something other than "union busting" was behind the transactions:

> [Appellant] did not know that Andy Pepper had talked to undercover cops on the waterfront about something so secret concerning [Appellant] that Mr. Pepper is more afraid of the [Honolulu Police Department (HPD) than he is of [Appellant]. [Appellant] did not know that Mr. Pepper was gonna accuse him of destroying his utility box and of stalking him. So all of these things come to fruition afterwards. We don't get any discovery until we're back in this court, when we know a[sic] about Mr. Pepper's conversations with undercover cops, when we know about now [sic] Mr. Guard hiring Matt Levi.
>
> . . . .
>
> I mean, I guess they're trying to say that we can't amend, that we are now judicially estopped, because on February 8th we believe that this was the motive on information and belief, Your Honor, we only allege that on information and belief. And now, of course, with every little inch of discovery I can squeeze out, the story becomes more apparent *that it didn't have anything to do with the union at all, it had something to do with my client, and it had something to do with knowing about his arrest and court record and trying to wrongfully exploit that.* Now, why? Only McCabe, only Mr. Pepper, knows why. I

don't know why. But now it's clear that the union had nothing to do with it, but it had everything to do with my client, and it had everything to do with his arrest record, that is clear, and that is the state interest, Your Honor.

Following arguments by counsel, the court ruled that Appellant's union activities motivated the defendants' conduct:

> THE COURT: Okay. This motion the Court struggled with greatly, and I think part of the problem is the inherent conflict between the federal interest, which, if it exists, is paramount versus the state interest, that is to protect its citizens against certain conduct that violates common laws here in Hawaii.
>
> The Court took some time to comb through the record in this matter to try to ascertain what is really going on in this entire matter, and the one conclusion the Court could not escape, and it always came back to, [Appellant's] association with the union. *And I think if [Appellant] were not associated with ILWU, that many, if not all, of these events would not have occurred. So the Court does believe that there is some union connection with the motive for all of these legal proceedings and affidavits and declarations to be executed, all designed to prosecute various claims against [Appellant].*
>
> [Appellees' counsel] is correct, and the Court did note that the burden of proof is such that if there is an arguable claim that the [NLRA] applies, that *the state court cannot take jurisdiction over this matter or any other claim, even if it is a claim for damages, which the NLRB does not provide any remedy for.*
>
> Obviously, it disturbs this court a bit, *but this court cannot escape the conclusion that there appears to be some connection or motivation to undertake all these activities by the defendant[s] that rests with union organization and union activities, and it is for that reason this court reluctantly concludes that the preemption provisions of the [NLRA] do apply in this*

---

9. In addition to Appellees' motion, the hearing addressed McCabe's motion for summary judgment, Shaw's motion for summary judgment, and defendants/counterclaimants Soares, Dias, Shaw, Lee, and Kalaiwaa's motion for summary judgment.

*case, and therefore the Court will grant the motion.*

(Emphases added.)

On August 22, 2001, the court granted Appellees' motion to dismiss the CAC for lack of jurisdiction or, in the alternative, summary judgment. The court ruled that Appellant's claims were preempted and dismissed them with prejudice:

> [A]ll claims, allegations, accusations and averments that were or could have been brought against [Appellees] in the [CAC], including but not limited to the First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth causes of action, shall be, and hereby are, dismissed with prejudice, given that the Court does not have subject matter jurisdiction over those claims because they are subject to federal preemption pursuant to the doctrine promulgated in ... *Garmon* [.]

The court did not render any findings of fact or conclusions of law.

### III.

Both the first and second McCabe defendants eventually settled with Appellant and the court approved the settlement on May 20, 2002. On June 3, 2002, Appellant moved for reconsideration of the August 22, 2001 order granting Appellees' motion to dismiss, or in the alternative, summary judgment, citing new evidence that Appellees had brought the first TRO action against him "without the knowledge or authorization of the persons for whom [Appellees] sought relief." The court denied the motion on August 27, 2002, and entered final judgment on October 23, 2002. On November 8, 2002, Appellant appealed.

### IV.

Appellant presents three issues on appeal. First, he contends that the predicate "fact" of

Appellees' anti-union theory was not, and could not be, alleged on a Hawai'i Rules of Civil Procedure (HRCP) Rule 12 motion to dismiss. Second, he argues that even if Appellant's anti-union theory implicated the NLRA, *Garmon* does not preempt state jurisdiction over serious torts or matters peripheral to federal labor law. Finally, Appellant maintains that preempting his claims would result in a violation of his constitutional rights, specifically his right to a trial by jury.

In response, Appellees argue that (1) Appellant is bound by his allegations of anti-union conspiracy under the doctrine of judicial estoppel because the courts have relied upon and accepted Appellant's position, (2) Appellant's allegations and repeated representations of anti-union conspiracy to the federal, state, and appellate courts, and the NLRB, involve protected rights under NLRA section 7 and unfair labor practices under NLRA section 8, (3) *Garmon* requires the dismissal of Appellant's claims because they "actually, arguably or potentially conflict with federal law," (4) any limitation of Appellant's monetary remedies does not invalidate preemption, (5) in connection with Appellant's preemption arguments, the court did not err in dismissing alleged violations of HRS 378–2,[10] (6) Appellant improperly raises constitutional arguments for the first time on appeal, and assuming their consideration, the arguments are wholly without merit.

### V.

 We address, first, Appellant's contention that his purported anti-union theory against Appellees could not be established on Appellees' HRCP Rule 12 motion to dismiss. To the extent that Appellees' motion contained documents related to matters outside the pleadings, we treat the motion as a mo-

---

**10.** HRS § 378–2 (Supp.1999) proscribes certain conduct with regard to employment practices. In his reply brief, Appellant requests leave to amend Count IX of his complaint in order to assert his claims under chapter 378 of the Hawaii Revised Statutes. The claims were brought against the earlier McCabe defendants and subsequently dismissed, against Appellees. Appellees correctly contend in their fifth argument,

that Appellant did not assert a claim against Appellees for violations of chapter 378 and thus, said issue was not raised in the proceedings below. *See Bitney v. Honolulu Police Dept.*, 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001) (holding that "[a]ppellate courts will not consider an issue not raised below unless justice so requires"). Accordingly, we do not reach this issue.

tion for summary judgment under HRCP Rules 12(c)[11] and 56.[12] "Unlike other appellate matters, in reviewing summary judgment decisions an appellate court steps into the shoes of the trial court and applies the same legal standard as the trial court applied." *Beamer v. Nishiki,* 66 Haw. 572, 577, 670 P.2d 1264, 1270 (1983) (quoting *Fernandes v. Tenbruggencate,* 65 Haw. 226, 228, 649 P.2d 1144, 1147 (1982)). This court reviews a circuit court's grant or denial of summary judgment *de novo. French v. Hawaii Pizza Hut, Inc.,* 105 Hawai'i 462, 466, 99 P.3d 1046, 1050 (2004). The standard for granting a motion for summary judgment is well settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004).

■ As to preemption, "[t]he burden of establishing pre-emption rests with the party seeking the benefit of pre-emption." *Casumpang v. ILWU, Local 142,* 94 Hawai'i 330, 340, 13 P.3d 1235, 1245 (2000) (internal quotation marks and citation omitted). This "burden is a considerable one, which requires overcoming the starting presumption that Congress does not intend to supplant state law." *Id.* (internal quotation marks and citation omitted).

## VI.

With regard to Appellees' first argument, although Appellees assert that Appellant is bound by his allegations of anti-union conspiracy under the doctrine of judicial estoppel, the inquiry as to whether Appellant is judicially estopped from now asserting that Appellees were motivated by reasons other than union animosity is not dispositive of the instant case.[13] We conclude that even assuming that Appellant is bound by his earlier assertion that Appellees acted because of Appellant's union activities, application of the preemption doctrine is not precluded.

For example, in *Linn,* a case involving a civil action for libel made in the course of a union organizing campaign, and therefore concerning a labor dispute, the Court ruled that the state court "does have jurisdiction to apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him." 383 U.S. at 55, 86 S.Ct. 657. In *Farmer v. United Bhd. of Carpenters,* 430 U.S. 290, 293, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the underlying complaint alleged that the defen-

---

**11.** Rule 12(c) of the Hawaii Rules of Civil Procedure (HRCP) states in relevant part:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**12.** HRCP Rule 56 states in relevant part:

> **(c) *Motion and proceedings thereon.*** ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law.

**13.** This court has previously stated that "[p]ursuant to the doctrine of judicial estoppel, [a] party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by his action." *Roxas v. Marcos,* 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998). The purpose of judicial estoppel is to prevent parties from "playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation." *Id.* (quoting *Rosa v. CWJ Contractors, Ltd.,* 4 Haw.App. 210, 219, 664 P.2d 745, 751 (1983)) (other citations omitted).

dants engaged in outrageous conduct arising from a disagreement between the parties over union policies. Despite reversal by the state appellate court in that case, the Court held that the NLRA did not preempt the action for IIED. *Id.* at 302, 97 S.Ct. 1056. It was noted that the allegations made by the complainant in that case "might form the basis for unfair labor practice charges before the [NLRB,]" *id.*, and that "a rigid application of the *Garmon* doctrine might support the conclusion of the California courts that [the complainant's] entire action was preempted by federal law." *Id.*

■ However, the Court concluded that "inflexible application of the doctrine is to be avoided, especially where the State has a substantial interest in regulation of the conduct at issue and the State's interest is one that does not threaten undue interference with the federal regulatory scheme." *Id.* Therefore, in considering the motion for summary judgment herein, the court was required to engage in a weighing of the "federal interest in uniform regulation of labor relations with the traditional concern and responsibility of the State to protect its citizens", *Linn*, 383 U.S. at 57, 86 S.Ct. 657, against tortious conduct. Thus, even if Appellant is held to his earlier position that Appellees harbored anti-union animus in committing the alleged tortious conduct, the court is not absolved from deciding whether the claims at issue were subject to exceptions to the preemption doctrine.

## VII.

■ This court has applied the *Garmon* preemption doctrine on two occasions. In *Gouveia*, the following frequently quoted passages from *Garmon* were declared the controlling principles:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by [section] 7 of the [NLRA], or constitute an unfair labor practice under [section] 8, due regard for the federal enactment requires that state jurisdiction must yield. ... To allow the States to control conduct which is the subject of

national regulation would create potential frustration of national purposes.

> At times it has not been clear whether the particular activity regulated by the States was governed by [section] 7 or [section] 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. *It is essential to the administration of the Act that these determinations be left in the first instance to the [NLRB].*

> ... *When an activity is arguably subject to [section] 7 or [section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the [NLRB] if the danger of state interference with national policy is to be averted.*

[*Garmon*, 359 U.S. at] 244–45[, 79 S.Ct. 773].

*Gouveia*, 65 Haw. at 193–94, 649 P.2d at 1123 (brackets omitted) (some emphasis in original and some added). It was said that "[t]he governing consideration is that to allow the States to control activities that are potentially subject to federal regulation involves too great a danger of conflict with national labor policy." *Id.* at 194, 649 P.2d at 1123. *Gouveia* went on to recognize exceptions to *Garmon* preemption, explaining that "concurrent state-court jurisdiction" is permitted where (1) "the challenged conduct has been marked by violence and imminent threats to the public order," *id.* at 194, 649 P.2d at 1124 (internal quotation marks omitted), (2) "the activity regulated [is] a merely peripheral concern of the [NLRA]," *id.* at 195, 649 P.2d at 1124, (3) "the regulated conduct touche[s] interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, ... it could not [be] infer[red] that Congress ha[s] deprived the States of power to act[,]" *id.*, or (4) a "state's interest in protecting the health and well-being of its citizens ... overr[i]de[s] the federal interest in a national labor policy[,]" *id.*, i.e., the harm "involve[s] 'outrageous conduct, threats, intimidation, and words' which caused the plaintiff to suffer 'grievous mental and emotional distress as well as great physical damage[,]' " *id.* (quoting *Farmer*, 430 U.S. at 301, 97 S.Ct. 1056).

This court further expounded on the *Garmon* preemption doctrine in *Briggs*. In their complaint, the plaintiffs in *Briggs* "complained merely of unfair labor practices which resulted in emotional and physical distress." 73 Haw. at 286, 831 P.2d at 1341. Therefore, it was held that dismissal was proper. *Id. Briggs* established the rule that "in order for a tort claim based on outrageous conduct to survive pre-emption, the outrageous conduct must be either 1) unrelated to governed labor practices or 2) ... accomplished in such an abusive manner that the *manner* itself becomes the basis for the claim." *Id.* at 285, 831 P.2d at 1341 (emphasis in original).

## VIII.

As to Appellant's second argument that the claims in his CAC are not preempted, and Appellees' second and third counter-arguments, we examine each claim in light of the precepts established in *Gouveia* and *Briggs*.

### A.

To begin, Appellant's first and second claims for relief, sounding in abuse of process, as alleged in paragraphs 81 to 87 and 88 to 94 of the CAC, respectively, were based on the first and second TRO actions brought against him by Appellees. The elements of the tort of abuse of process are "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." *Wong v. Panis,* 7 Haw.App. 414, 420, 772 P.2d 695, 699–700 (1989), *abrogated in part* by *Hac v. Univ. of Hawaii,* 102 Hawai'i 92, 73 P.3d 46 (2003). "Liability for abuse of process is imposed when the putative tortfeasor uses legal process 'primarily' for an ulterior motive." *Id.* (citing Restatement (Second) of Torts § 682 (1977)) [hereinafter, Restatement].

Appellant alleged the following in paragraphs 83 and 90:

*Defendants instigated and procured said court processes for ulterior and improper purposes, including without limitation: (a) retaliating against Plaintiff; (b) preventing Plaintiff from working as a stevedore; (c) blemishing Plaintiff's work history and blackening his character; (d) interfering with his probation; and (e) harassing and intimidating Plaintiff emotionally and financially.*

(Emphasis added.) Appellant further averred, in paragraphs 84 and 91, that "[t]he use of the court processes for such purposes are purposes other than those for which the processes were designed and intended[ ]" and, in response, Appellees argue that "[w]hile [Appellant] mentions his abuse of process claims in passing, virtually all of his arguments in his brief pertain to his malicious prosecution claim." Proffering no discussion as to any failure of Appellant to sufficiently allege abuse of process, Appellees simply contend that "courts routinely dismiss abuse of process claims where plaintiffs have acknowledged that a defendant's motive involved a labor-related animus." Accordingly, we do not reach the question of whether Appellant sufficiently pled the abuse of process claims. *See Taomae v. Lingle,* 108 Hawai'i 245, 257, 118 P.3d 1188, 1200 (2005) (stating that "[t]his court may 'disregard [a] particular contention' if [a party] 'makes no discernible argument in support of that position' " (quoting *Norton v. Admin. Dir. of the Court,* 80 Hawai'i 197, 200, 908 P.2d 545, 548 (1995))).

### B.

However, based on a review of the record, we conclude that Appellant's claims for abuse of process are preempted by the NLRA. Appellant alleged retaliation, prevention of his ability to work, and the blemishing of his work history and character as several of the ulterior and improper purposes attributed to Appellees.[14] These relate to his em-

14. As earlier stated, Section 7 of the NLRA sets forth the rights of employees including the right to "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection[.]" 29 U.S.C. § 157. Further-more, Section 8 states that "[i]t shall be an unfair labor practice for an employer ... to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed under section 7[.]" 29 U.S.C. § 158.

ployment and the exercise of his duties as shop steward for his union.

Having determined that the conduct may arguably be protected, *Gouveia* requires further analysis. Appellant argues that causes of action for abuse of process are " 'deeply rooted' in local responsibility[,]" that the state has an interest "in protecting its citizens from abusive use of the courts[,]" and that the state has "a substantial interest in policing its own court system". However, given the circumstances of this case, we believe that such interests are insufficient to override the federal labor scheme.

The Supreme Court's decision in *Local 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 103 S.Ct. 1453, 75 L.Ed.2d 368 (1983), is instructive. In *Jones*, a former employee brought an action in state court for tortious interference alleging that after he resigned his union membership, the union coerced his employer into firing him, thereby breaching his employment contract. *Id.* at 672–73, 103 S.Ct. 1453.

The Court concluded that the cause of action alleging the union's interference with an employment contract was preempted by the NLRA's prohibition against coercive interference. *Id.* at 681–82, 103 S.Ct. 1453. It explained that "a fundamental part of such a claim is that the union actually caused the discharge and hence was responsible for the employer's breach of contract. Of course, this same crucial element must be proved to make out a . . . case [under the NLRA.]" *Id.* at 682, 103 S.Ct. 1453. Hence, the Court decided that "the federal and state claims are thus the same in a fundamental respect[.]" *Id.* The Court accordingly concluded that the state cause of action was preempted. *See also Lumber Prod. Indus. Workers Local No. 1054 v. W. Coast Indus.*, 775 F.2d 1042, 1049 (9th Cir.1985) (citing *Jones* for the proposition that a "state-law claim is preempted" " 'if the conduct relied on to prove a crucial element in the state action is conduct that is arguably covered by the NLRA' " (quoting 460 U.S. at 682, 103 S.Ct. 1453)).

In the instant case, inasmuch as Appellant alleges retaliation, prevention of his ability to work, and injury to his work history as the ulterior motives for Appellees' alleged conduct, proving such allegations would be crucial elements of his abuse of process claims. A fundamental part of Appellant's claims is that Appellees acted after Appellant exercised his rights and duties as a union shop steward in voicing his concerns about alleged violations by McCabe of the union contract. Such rights and duties are encompassed by the mutual aid or protection clause of section 7 of the NLRA, interference with which is prohibited under section 8 of the Act. *See e.g., N.L.R.B. v. City Disposal Sys., Inc.*, 465 U.S. 822, 833, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984) (explaining that a single employee's invocation of rights set forth in a [collective bargaining agreement (CBA)] is presumed to be concerted activity because the CBA was put into effect by group action).

With respect to the danger of interference with the NLRA, the Fourth Circuit stated in *Richardson v. Kruchko & Fries*, 966 F.2d 153 (4th Cir.1992), as follows:

> Adjudication of the claims would require a court to pass on the legality under the NLRA of precisely the same conduct that is presently before the NLRB, and would risk frustration of national labor policy through inconsistent state-law judgments—precisely the evils that *Garmon* preemption seeks to avoid. "In a case where, as here, the substance of the dispute is the same under both state and federal law, the state law must yield to the jurisdiction of the NLRB."

*Id.* at 158 (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1518 (11th Cir.1988)). *See also Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 202, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (stating that, "when the same controversy may be presented to the state court or the NLRB, it must be presented to the Board"). Therefore, we hold that Appellant's claims for abuse of process, as well as the derivative claims relating to them, are preempted. *See Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App.4th 566, 32 Cal.Rptr.3d 244, 253–54 (2005) (holding that aiding and abetting and conspiracy are derivative tort claims).

## IX.

■ Similar to Appellant's claims for abuse of process, we hold that Appellant's claim for relief of malicious prosecution[15] under paragraphs 95 to 102 of the CAC, as well as the derivative claims of conspiracy and aiding and abetting as to this claim, are preempted.

### A.

The basis for the malicious prosecution claim arises from the second TRO action wherein Appellees apparently alleged that Appellant was violent, had committed violence in the workplace, and presented an imminent danger of bodily harm in the workplace. On March 29, 2000, following an evidentiary hearing, the TRO court entered findings of fact, conclusions of law, and an order in favor of Appellant. McCabe filed a notice of dismissal on the same day, without prejudice.

Appellant maintained that an order was entered in his favor, that the second TRO action was initiated without probable cause, and that the action was filed in a "malicious" manner. In paragraph 95, Appellant "repeats, re-avers, and incorporates paragraphs 1 through 94" of the CAC. As earlier stated, paragraphs 83 and 90 of the CAC allege that the court processes, *i.e.*, the first and second TRO actions, were instigated for ulterior purposes having to do with retaliation and employment-related matters. Appellant further declared, under paragraph 102 of the CAC, that the conduct was "done with the intent to deprive [Appellant] of legal rights or otherwise to cause [Appellant] injury" and that such conduct was made "in conscious disregard of his rights[.]"

On appeal, Appellant again contends that his claim is not preempted because claims for malicious prosecution are "deeply rooted in local responsibility" under *Garmon*, and cites *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772 (9th Cir.2000), *cert. denied*, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001). In *Radcliffe*, union representatives were sub-

jected to citizen's arrest for trespass and prosecution for their refusal to leave job sites. *Id.* at 776. The union representatives brought civil rights and state tort claims for, among others, false arrest, false imprisonment, and malicious prosecution against the defendants. *Id.* at 776–77. The United States district court entered summary judgment for the defendants dismissing the plaintiff's state tort claims.

The Ninth Circuit court reversed as to the dismissal of the state-law claims for false arrest, false imprisonment, and malicious prosecution, concluding that these claims were not preempted by the NLRA. In doing so, that court stated that the freedom of citizens from these torts

> touch interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of power to act.... *Thus false arrest, false imprisonment, and malicious prosecution are similar to torts of threatened violence, traditionally held not to be preempted, or [IIED], and defamation, both of which the Supreme Court has held to be excepted from Garmon's preemption rule even though they involve conduct arguably protected or prohibited by the NLRA.*

*Id.* at 785 (emphasis added and in original) (internal citations omitted). The *Radcliffe* court further explained that the fact that such claims might constitute an unfair labor practice "does not inevitably cause preemption of the state claim." *Id.*

Appellees contend that *Radcliffe* is inapposite to the instant case because that court's holding was premised on an issue not before this court, namely trespass, that clearly implicated property rights traditionally protected by states. Central to the *Radcliffe* court's decision was that California's general trespass statute did not apply to "lawful union activity" on the employer's premises. *Id.* at 777. That court reasoned that "the property

---

**15.** This court has established that the tort of malicious prosecution requires "(1) that the prior proceedings were terminated in the plaintiff's favor; (2) *that the prior proceedings were initiated* *without probable cause;* and (3) that the prior proceedings were initiated with malice." *Reed v. City & County of Honolulu*, 76 Hawai'i 219, 230, 873 P.2d 98, 109 (1994) (emphasis in original).

right underlying the law of trespass, of course, is a matter of state law." *Id.* at 784.

### B.

As earlier stated, this court in *Gouveia* recognized, as Appellant argues, that state regulation is permitted where the regulated conduct touches deeply rooted interests and "in the absence of compelling congressional direction," it cannot be said that Congress intended to deprive states of jurisdiction. 65 Haw. at 195, 649 P.2d at 1124 (citing *Garmon*, 359 U.S. at 244, 79 S.Ct. 773). *Gouveia*, however, cautioned that concurrent state-court jurisdiction is not permissible "where a realistic threat of interference with the federal regulatory scheme exist[s]." *Id.* at 196, 649 P.2d at 1125.

We observe that certain state interests are implicated in a suit for malicious prosecution, including maintaining the integrity of the judicial system, providing injured persons with some form of redress, and preserving an individual's right to petition the court and to a jury trial. Malicious prosecution may also result in substantial damages, including punitive damages, which the NLRB could not provide to an injured party in an unfair labor practice proceeding.[16] *Linn*, 383 U.S. at 63–64, 86 S.Ct. 657.

However, similar to the claims for abuse of process, the malicious prosecution claim in this case presents a "realistic risk of interference with the [NLRB's] primary jurisdiction to enforce the statutory prohibition against unfair labor practices." *Sears*, 436 U.S. at 198, 98 S.Ct. 1745. In his CAC, Appellant attributes Appellees' conduct as motivated by a desire to retaliate against him for his exercise of union duties, and to interfere with his employment. These allegations directly implicate factual conduct covered under sec-

tions 7 and 8 of the NLRA. *See Richardson*, 966 F.2d at 158. We hold, then, that Appellant's claim for malicious prosecution is preempted, and the derivative claims relating to this tort are similarly preempted.

### X.

While Appellant's claims for abuse of process and malicious prosecution are preempted, Appellant's remaining claims for IIED, false light invasion of privacy, and defamation are not preempted inasmuch as these claims, as alleged, do not present a realistic danger of interfering with the national labor policy and fit within the exceptions to *Garmon* as set forth in *Gouveia* and *Briggs*.

### XI.

■ We hold that Appellant's sixth claim for relief, IIED, although arguably protected under the NLRA, is not preempted. Under paragraphs 117 to 123 of the CAC, Appellant maintains that he was retaliated against for his union activity, thus causing him emotional distress. Paragraphs 118 to 120 of his CAC alleged the acts giving rise to Appellant's IIED claim, including allegations of filing multiple TROs, transmitting false information to other persons with the intent of causing statewide republication, and falsely accusing Appellant of wrongful acts such as witness intimidation, property destruction, drug use, and the terrorizing of witnesses.

■ This court has addressed the issue of preemption on state-law claims for IIED.[17] In *Briggs*, it was said that " 'outrageous conduct, threats, intimidation, and words' which cause a plaintiff to suffer 'grievous mental and emotional distress as well as great physical damage' may also fall within

---

16. In their fourth argument, Appellees contend that "any limitation of Appellant's monetary remedies does not invalidate preemption[.]" In any event, the cases indicate that the availability of monetary damages can be a factor in determining whether a state-tort claim is preempted.

17. During the course of the underlying proceedings, the elements required for the tort of intentional infliction of emotional distress (IIED) were (1) that the act causing the harm was intentional, (2) that the act was unreasonable, and (3) that

the actor should have recognized the likelihood of harm. *Wong v. Panis*, 7 Haw.App. 414, 421, 772 P.2d 695, 700 (1989). Subsequently, we have abrogated that test and established that in a claim for IIED, the elements required are "(1) that the act allegedly causing harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another." *Hac v. Univ. of Hawaii*, 102 Hawai'i 92, 106–07, 73 P.3d 46, 60–61 (2003).

an exception to the federal interest in the national labor policy and therefore permit state law recovery." 73 Haw. at 284, 831 P.2d at 1341 (quoting *Farmer*, 430 U.S. at 301, 97 S.Ct. 1056). As noted above, this court held that allegations of such conduct may survive preemption provided that certain requirements are met:

> [I]n order for a tort claim based on outrageous conduct to survive pre-emption, the outrageous conduct must be either 1) unrelated to governed labor practices, *or* 2) be accomplished in such an abusive manner that the manner itself becomes the basis for the claim.

*Id.* at 285, 831 P.2d at 1335 (emphasis added).

*Briggs* relied on the Supreme Court decision in *Farmer*. In *Farmer*, the Supreme Court permitted a state-law claim for IIED to proceed despite the broad application given to NLRA preemption pursuant to *Garmon*. In that case, the plaintiff alleged that union officials discriminated against him in referrals to employers following a disagreement over union policies. 430 U.S. at 292, 97 S.Ct. 1056. In holding that the IIED claim survived preemption under *Garmon*, the Court said:

> If the charges in [the plaintiff's] complaint were filed with the [NLRB], the focus of any unfair labor practice proceeding would be on whether the statements or conduct on the part of [u]nion officials discriminated or threatened discrimination against him in employment referrals for reasons other than failure to pay [u]nion dues. Whether the statements or conduct of the respondents also caused [the plaintiff] severe emotional distress and physical injury would play no role in the [NLRB's] disposition of the case, and the [NLRB] could not award [the plaintiff] damages for pain, suffering, or medical expenses. Conversely, the state-court tort action can be adjudicated without resolution of the "merits" of the underlying labor dispute. Recovery for the tort of emotional distress under California law requires proof that the defendant intentionally engaged in outrageous conduct causing the plaintiff to sustain mental distress. *The state court need*
> *not consider, much less resolve, whether a union discriminated or threatened to discriminate against an employee in terms of employment opportunities. To the contrary, the tort action can be resolved without reference to any accommodation of the special interests of unions and members in the hiring hall context.*

*Id.* at 304, 97 S.Ct. 1056 (emphasis added) (citations omitted).

This court in *Briggs*, citing to *Farmer*, recognized that claims for IIED are not automatically preempted:

> [U]nion discrimination in employment opportunities [conduct violating the NLRA] cannot itself form the underlying "outrageous" conduct on which the state-court tort action is based; to hold otherwise would undermine the pre-emption principle. Nor can threats of such discrimination suffice to sustain state-court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety. *But something more is required before* concurrent state-court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either *unrelated* to employment discrimination *or a function of the particularly abusive manner* in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

*Briggs*, 73 Haw. at 285, 831 P.2d at 1341 (citing *Farmer*, 430 U.S. at 305, 97 S.Ct. 1056) (emphases in original). Hence, in order for Appellant to proceed with his claim for IIED, the claim must either be (1) unrelated to employment discrimination or (2) "a function of the particularly abusive manner in which the discrimination is accomplished or threatened rather then a function of the actual or threatened discrimination itself." *Id.* A review of the record in this appeal indicates that Appellant cannot succeed under the first prong since the claim for IIED, as alleged, arises in part, from union-related activity. The alleged conduct imputed by Appellant to the original defendants and Appellees occurred shortly after the disagreement over the terms of the union contract

and work rules. Based on the record and the allegations contained in the CAC, it cannot be said that Appellant's claim is unrelated to employment discrimination.

However, Appellant satisfies the pleading requirements under the second prong. Appellant alleges that Appellees and defendants (1) took steps in procuring multiple TROs and "causing [a] subpoena duces tecum to be served on the Probation office in order to threaten (i) the revocation of [Appellant's] deferred acceptance of guilty plea, (ii) the entry of a guilty plea against [Appellant], (iii) the sentencing of [Appellant] to prison, or (iv) otherwise to cause [Appellant] to have difficulties with the Probation office"; (2) "directly or indirectly transmitted false information to other persons ... with the intent of causing statewide republication of said false information"; and (3) "embarked on a campaign to falsely accuse [Appellant] of various acts including witness intimidation, property destruction, drug use, and terrorizing of 'key witnesses.' " As a matter of law, engaging in conduct designed to threaten a person's liberty and reputation in the manner alleged may constitute particularly abusive behavior. Moreover, such conduct cannot be characterized as simply a function of employment discrimination for, under the allegations, the conduct goes beyond mere "threat, or actuality, of employment discrimination[,]", *id.*, stemming from a union-related dispute. To the extent that Appellant can show that these acts were done in a particularly abusive manner, they are outside the purview of preemption.

## XII.

■ Appellant's fifth claim for false light invasion of privacy [18] in paragraphs 110 to 116 of the CAC, sets forth factual allegations similar to those of his claim for defamation. *See infra.* However, a cause of action for false light differs from defamation in that "[i]t is enough that [a plaintiff] is given un-

reasonable and highly objectionable publicity that attributes to him characteristics, conduct or beliefs that are false, and so is placed before the public in a false position." Restatement § 652E, comment b.

In paragraph 112, Appellant alleges that Appellees "publicized matters" relating to him, placing him "in a false light before the public," and "with reckless disregard as to the truth of the matters." Appellant further alleges in paragraph 114 that Appellees knew that the statements "were false or acted in reckless disregard of the truth of the statements which were made[,]" and, under paragraph 116, that the making of the statements was "intentional, wilful, wanton, fraudulent, malicious and/or oppressive[.]"

■ The Supreme Court has not decided the question of whether the tort of false light invasion of privacy is preempted by the NLRA. In order to establish a claim for false light invasion of privacy, the plaintiff must show that defendant had "knowledge of ... or reckless disregard as to the falsity of the publicized matter and the false light in which [the plaintiff] would be placed[,]" Restatement § 652E, which would be "highly offensive to a reasonable person[,]" *id.*

■ We observe that the issues to be decided by the NLRB in an unfair labor practice proceeding would differ from the issues to be decided by a court in a tort action for false light invasion of privacy. The NLRB would focus on the effect of such alleged acts on Appellant's association with the labor union while a state court would focus on infringement of Appellant's right to privacy. Thus, a claim for false light invasion of privacy would merely be a "peripheral concern" of the NLRA. *Gouveia*, 65 Haw. at 195, 649 P.2d at 1124. As such, this cause of action will not unduly interfere with debate in the labor context.

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and
(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

---

**18.** The Restatement (Second) of Torts § 652E (1997) defines the tort of false light invasion of privacy as follows:

One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

Moreover, we believe the interests of an individual in securing his or her privacy is a primary state concern and that a claim for false light invasion of privacy is "deeply rooted in local feeling and responsibility[.]" *Id. Cf. State v. Lester,* 64 Haw. 659, 667, 649 P.2d 346, 353 (1982) (emphasizing the scope of the right to privacy by stating that "[t]he right-to-privacy provision of [Article I, section 6 of the Hawai'i Constitution] relates to privacy in the informational and personal autonomy sense," which encompasses "the common law right to privacy or tort privacy, and the ability of a person to control the privacy of information about himself such as unauthorized public disclosure of embarrassing or personal facts about himself" and that *"[i]t concerns the possible abuses in the use of highly personal and intimate information in the hands of government or private parties "* (emphasis added) (internal citations omitted)). We therefore hold that Appellant's claim of false light invasion of privacy is not preempted by the NLRA, and was sufficiently pled.

### XIII.

With respect to his fourth claim of defamation, alleged in paragraphs 103 to 109 of the CAC, Appellant in paragraph 105 avers such harm as follows:

The statements were untrue and Defendants knew they were untrue at the time they made said representations. These accusations were false and defamatory on their face, imputed in Plaintiff an *unfitness to perform the duties of his employment or any employment, and prejudiced him in such employment and in any other employment that he might potentially seek.* It was readily foreseeable that these false and defamatory accusations caused injury to Plaintiff, including in his profession, calling, or trade.

(Emphasis added.) Appellant further asserted in paragraph 109 that Appellees' conduct was "malicious."

The harm alleged predominantly relates to Appellant's employment. This cause of action may require the court to adjudicate issues related to union animosity. Thus, Appellant's claim for defamation arguably

involves activity protected under section 7 of the NLRA. However, the Supreme Court's examination of preemption of defamation in *Linn* is illuminative.

In *Linn,* the plaintiff company manager brought an action against the union for false and defamatory statements made in the course of the union's organizing campaign. 383 U.S. at 55, 86 S.Ct. 657. The United States district court dismissed the complaint on the basis of preemption. *Id.* The plaintiff appealed to the Sixth Circuit, which affirmed. *Id.* The Supreme Court reversed, holding that concurrent jurisdiction was proper:

[E]xercise of state jurisdiction here would be a *"merely peripheral concern of the Labor Management Relations Act,"* provided it is limited to redressing libel issued with knowledge of its falsity, or with reckless disregard of whether it was true or false. *Moreover, we believe that "an overriding state interest" in protecting its residents from malicious libels should be recognized in these circumstances.*

*Id.* at 61, 86 S.Ct. 657 (emphases added). According to the Court, in *Linn,* "a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon.*" *Id.* at 62, 86 S.Ct. 657. The Court recognized that a potential conflict between state court actions for defamation and the NLRA should be resolved in favor of state jurisdiction:

While the [NLRB] might find that an employer or union violated § 8 by deliberately making false statements, or that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. *The injury that the statement might cause to an individual's reputation—whether he be an employer or union official—has no relevance to the Board's function.* ... The Board can award no damages, impose no penalty, or give any other relief to the defamed individual. *On the contrary, state remedies have been designed to compensate the victim and enable him to vindicate his*

*reputation. The [NLRB]'s lack of concern with the 'personal' injury caused by malicious libel, together with its inability to provide redress to the maligned party, vitiates the ordinary arguments for preemption.*

*Id.* at 63, 86 S.Ct. 657 (emphases added). However, concerned with the perceived danger that state suits would be utilized as "weapons of economic coercion", *id.* at 64, 86 S.Ct. 657, and the potential "threat to stability of labor unions and smaller employees," *id.*, the Court directed that state remedies be limited to instances where a complainant can establish that the defamatory statements were made with malice, *i.e.*, that Appellees knew the statements were false or had a reckless disregard for their truth, *see New York Times v. Sullivan,* 376 U.S. 254, 279–90, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and caused actual damage.[19] *Linn,* 383 U.S. at 64–65, 86 S.Ct. 657.

The Court allowed recovery if a complainant adduces evidence as to the extent of the resulting harm which may include "general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law[,]"[20] *id.* at 65, 86 S.Ct. 657, and as to "some sort of compensable harm as a prerequisite to the recovery of additional punitive damages[,]" *id.* at 66, 86 S.Ct. 657.

We note that Appellant has pled, under paragraph 104, that Appellees allegedly published falsities including (1) that Appellant is a violent and dangerous individual, (2) that he is similar to a person who murdered seven people in an event of workplace violence in Honolulu in the recent past, (3) that he is similar to a person who murdered three workers, (4) that he is similar to a person who "massacred" his workplace supervisor in a Connecticut incident, (5) that he "became

angry" and started an altercation with Soares, (6) that Soares did not provoke the dispute with Appellant, (7) that Appellant is associated and affiliated with, and is therefore responsible for, wrongful acts by other persons, (8) that Appellant physically attacked Lee, (9) that Appellant caused a physical altercation with police at a night club, (10) that Appellant was taking steroids, (11) that Appellant destroyed property, and (12) that Appellant physically attacked Kalaiwaʻa.

■ As required by *Linn,* Appellant has pled, under paragraph 107, that the statements "impugned [Appellant's] reputation" and "held him up to scorn and ridicule and feelings of contempt and execration in the community at large[,]" and under paragraphs 105 and 109 of the CAC, that "[t]he statements were untrue and [Appellees] knew they were untrue at the time" and that the statements were made with malice. Therefore, based on the allegations, Appellant's defamation claim cannot be dismissed at this point. Inasmuch as Appellant's claims for conspiracy and aiding and abetting are derivative claims, such claims are not preempted insofar as the underlying tort is not.

## XIV.

As discussed *supra,* the court approved a settlement between the first and second McCabe defendants and Appellant, leaving only Appellees as defendants in this appeal. The fact that Appellees are attorneys, as opposed to employers, does not conflict with preemption. We note that the definition of "employer" in the NLRA "includes any person acting as an agent of an employer, directly or indirectly." 29 U.S.C. § 152(2).

■ Appellant has alleged in the CAC that Appellees were agents of the defendants. This agency relationship is set forth in the CAC at paragraph 14:

---

**19.** In contrast to this court's holding in *Beamer v. Nishiki,* 66 Haw. 572, 578–79, 670 P.2d 1264, 1271 (1983), in order for a defamation claim to be exempt from preemption, a plaintiff is required to show malice on the part of the party attributed with the defamatory statement, without regard to the plaintiff's status as a public figure.

**20.** The United States Supreme Court in *Linn v. United Plant Guard Workers of Am., Local 114,* 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (1966), noted that the complaint in that case failed to allege these requirements. Nevertheless, the Court granted the plaintiff leave to amend his complaint and imposed on him the burden of supporting the allegations. *Id.* at 66, 86 S.Ct. 657.

Plaintiff is informed and believes and alleges alternatively, that at relevant times mentioned herein, *all of the Defendants were: (a) acting as agents of each of the other Defendants,* and the acts of one were taken on behalf of the other Defendants herein, and/or (b) acting as co-conspirators of each of the other Defendants, and the acts of one were taken in furtherance of the conspiracy among the Defendants herein, and/or (c) aiding and abetting each of the other Defendants in the commission of the wrongs alleged herein; and/or (d) *were principals in a principal-agent relationship with MHJP and Pepper as agents.*

(Emphases added.) Similarly, in their motion to dismiss, Appellees acknowledged that *Garmon* preemption applies to attorneys of employers accused of unfair labor practices. As stated *supra,* the definition of "employer" in the NLRA includes agents of the employer. Hence, Appellees may raise preemption in defense to Appellant's claims. *See Richardson,* 966 F.2d at 157 (stating that "third parties such as attorneys do typically act as agents of the employer, and are thus, in such cases, clearly subject to the NLRA" (internal citations omitted)).

## XV.

Finally, in his third issue on appeal, Appellant argues that preemption would violate his right to a trial by jury under the Seventh Amendment to the United States Constitution. Appellees, in their sixth argument, contend that this issue was improperly raised. Appellant does not direct this court to an instance where this argument was directed to the court. Accordingly, we do not consider it. "As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal; this rule applies in both criminal and civil cases." *State v. Moses,* 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003). *See, e.g., State v. Hoglund,* 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) (stating that, "[g]enerally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal").

## XVI.

Based on the foregoing, we affirm in part and vacate in part the October 23, 2002 final judgment of the court granting Appellees' motion for summary judgment and dismissing Appellant's CAC for lack of subject matter jurisdiction and remand for further proceedings consistent with this opinion.

