WILLIAM BRIGGS and DONOVAN WEBB, Plaintiffs–
Appellants, v. HOTEL CORPORATION OF THE
PACIFIC, INC. d/b/a ASTON HOTELS AND RESORTS,
INC. d/b/a ASTON SANDS OF KAHANA; ASSOCIA-
TION OF APARTMENT OWNERS KE NANI KAI;
ANDY GONZALES; ANDRE TATIBOUET; TOVIC
LEIBERMAN; JOHN DOES 1–10; JANE DOES 1–10;
DOE CORPORATIONS 1–10; and DOE PARTNER-
SHIPS 1–10, Defendants–Appellees

NO. 15459

(CIV. NO. 90–0477(3))

JUNE 30, 1992

LUM, C.J., WAKATSUKI, MOON, AND KLEIN, JJ.,
AND INTERMEDIATE COURT OF APPEALS
ASSOCIATE JUDGE HEEN, IN PLACE OF
LEVINSON, J., RECUSED

## OPINION OF THE COURT BY LUM, C.J.

Plaintiffs–appellants William Briggs (Briggs) and Donovan Webb (Webb) appeal from an order granting a motion for dismissal on the pleadings or alternatively for summary judgment on behalf of defendants–appellees Hotel Corporation of the Pacific (Aston), Andre Tatibouet (Tatibouet), and Apartment Owners of Ke Nani Kai (Ke Nani Kai). Briggs and Webb additionally appeal from an order denying their motion for reconsideration of the above order, as well as an order denying objections to an order dismissing defendants Andy Gonzales (Gonzales) and Tovic Lieberman (Lieberman).

Because we find no facts pleaded or submitted through affidavits which would exclude plaintiffs' claims against defendants from the purview of the National Labor Relations Act, we find that the claims are pre–empted by federal law. Accordingly, we affirm the judgment of the circuit court. We further find that Webb and

Briggs did not timely serve Gonzales and Lieberman and hereby affirm the circuit court's order denying Webb's and Briggs' objections to the order dismissing Gonzales and Lieberman.

## I.

Briggs, an employee of Ke Nani Kai, and Webb, an employee of Aston, filed the instant suit on August 22, 1990, complaining that in 1988, Aston and Ke Nani Kai improperly induced Webb to solicit Briggs' assistance in defeating a vote by Aston employees to unionize,[1] and Briggs was persuaded to inform employees that Aston promised to raise employee salaries by $2.00 an hour if employees rejected unionization. Employees of Aston did, in fact, vote to reject unionization. Briggs and Webb then claimed that Aston and Ke Nani Kai reneged on the promised wage increase. Webb and Briggs further claimed that in response to investigations by the National Labor Relations Board, Aston and Ke Nani Kai sought Webb's and Briggs' participation in a cover–up of the improper offer of wage increases. Webb and Briggs finally alleged that the defendants were "negligent, grossly negligent, reckless, intentional, wanton, malicious and\or fraudulent in their conduct" and that this conduct resulted in constructive discharge. They claimed to have suffered emotional, physical and pecuniary injury.

On March 15, 1991 the court filed a notice of dismissal as to defendants Gonzales and Lieberman because Webb and Briggs had not effected service upon them within six months of filing their complaint. Webb and Briggs filed objections, claiming that they could not locate these defendants. The court denied these

[1] These claims were also the basis of complaints pursued under the NLRA (National Labor Relations Board, Case No. 37–RC–2938 and Case No. 37–2646) and Hawaii's Workers' Compensation Law (*Webb v. Aston Hotels*, Dep't of Labor and Indus. Relations, Case No. 7–88–05765 and *Briggs v. Association of Apartment Owners of Ke Nani Kai*, Case No. 8–89–01993).

objections by order dated May 14, 1991, the court finding no specific reasons of good cause as to why these defendants were not served within the six month period specified by Rule 28 of the Rules of the Circuit Courts of the State of Hawaii (RCCH). [2]

The record shows that eight months after the suit was initially filed very little discovery had been sought by Plaintiffs. Aston filed a motion, in which Ke Nani Kai joined, asking the court to dismiss the complaint and in the alternative for summary judgment, contending that the National Labor Relations Act (NLRA) pre–empted the claims against them. Briggs and Webb filed a memorandum in opposition arguing that the intentional and malicious conduct referred to in their complaint was sufficient to except plaintiffs' complaint from exclusive federal jurisdiction, that their claims were not barred by workers' compensation laws because their claims were not against their respective employers,[3] and that conduct which occurred prior to or after the election was not pre–empted by the NLRA. No affidavits were attached to this memorandum.

On April 22, 1991, the day before hearing on this motion, plaintiffs submitted a supplementary memorandum and affidavits of Webb and plaintiffs' attorney but not one of Briggs. Plaintiffs' attorney Lowell Chatburn (Chatburn) informed the court that Briggs was unavailable but asked that "if the Court deems additional information is needed to decide the motion," the court allow

---

[2] Although not entirely clear from the record, Lieberman and Gonzales were apparently employees holding supervisory positions within Aston. Significantly, Webb and Briggs directed no discovery as to their whereabouts to Aston or Ke Nani Kai. Furthermore, the record indicates that Gonzales was listed in the telephone directory at the time of litigation. Based on the record, we believe the court was correct in dismissing them from this action.

[3] Plaintiffs also contended that claims regarding conduct after constructive discharge against their employers were not barred by the workers' compensation law's exclusivity of remedy.

Chatburn more time pursuant to Hawaii Rules of Civil Procedure (HRCP) Rule 56(f).

Webb's affidavit supported the general allegations made in the complaint and further alleged that he received anonymous and threatening phone calls after the employer reneged on the wage increase and that he suffered emotional distress.[4] Webb further stated that Gonzales, a supervisory worker, called him and "exacerbat[ed] my emotional and physical condition." Webb did not specify the subject matter of these calls.

Attorney Chatburn supplied an affidavit explaining that Briggs was a merchant marine currently unavailable to supply an affidavit but that Briggs had previously related to Chatburn that he had been subjected to "physical and mental abuse" by Aston employees; that he had been physically and verbally threatened by the parties, their employees, and their relatives; and that Briggs had been made to look like a liar and felt in danger of physical harm while on Molokai. The threats continued even after Briggs' employment with Ke Nani Kai ended. Chatburn further alleged that these incidents resulted in anxiety and stress disorders which necessitated medical treatment. The conclusory statements of both Chatburn and Webb did not provide the court with specific facts of outrageous conduct committed by defendants.[5]

On May 14, 1991, following the hearing of April 23, 1991, the court granted defendants' motion for summary judgment, finding no genuine issue of material fact and holding that the claims were barred by the federal labor law pre–emption doctrine set forth in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959).

---

[4] Webb alleged that Briggs also received these anonymous threats but these assertions were not based on personal knowledge.

[5] "Memorandum of counsel and an affidavit that is merely an assertion of conclusions which are filed by the non–moving party are not sufficient to raise a genuine issue of material fact on a motion for summary judgment." *K.M. Young & Assoc., Inc. v. Cieslik*, 4 Haw. App. 657, 658, 675 P.2d 793, 796 (1983).

Plaintiffs filed a motion to reconsider on May 14, 1991 and attached thereto new affidavits of Webb and Briggs. For the first time, with some specificity, Briggs and Webb detailed incidents of physical threats, vandalism, and burglary.[6] However, the affidavits did not mention by name, position, or agency, a connection to Aston or Ke Nani Kai or suggest that they were responsible for these incidents. On the face of these affidavits, no outrageous conduct was attributed to Aston or Ke Nani Kai on any legal theory. On June 3, 1991, following a hearing on May 14, 1991, the court issued an order denying Briggs' and Webb's motion for reconsideration. This appeal followed.

## II. Pre–emption

The National Labor Relations Act provides as follows:

It shall be an unfair labor practice for an employer –

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 [providing the right of employees to self organization, to form labor organizations, and to bargain collectively] of this title;

. . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . .

(4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter[.]

---

[6] For example, Briggs alleged that his home had been burglarized, that a co–worker had physically threatened him, that he and his fiance had received anonymous threatening telephone calls, that deer entrails had been strewn across his yard, and his automobile tires had been slashed. These events began occurring after the union election.

National Labor Relations Act, 29 U.S.C. § 158 (1988). There seems to be little question that the acts which Webb and Briggs directly attribute to Aston and Ke Nani Kai fall within the offenses described by the above statute.

There can be no dispute that inducing employees to vote against unionization by promises of higher wages is an unfair labor practice. *See, e.g., NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409 (1964) (providing wage increases during an election campaign was an unfair labor practice where the express purpose of the conduct was to impinge on the employees' freedom of choice); *NLRB v. Del Rey Tortilleria, Inc.*, 787 F.2d 1118, 1122 (7th Cir. 1986) (promise of wage increase in return for rejection of union was unfair labor practice). Additionally, constructive discharge in retaliation for a failure to cooperate with an investigation of the employer's labor practices was also a violation of the NLRA. *See, e.g., Jack Thompson Oldsmobile, Inc. v. NLRB*, 684 F.2d 458 (7th Cir. 1982) (constructive discharge is an unfair labor practice).

*San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959) set forth the general rule that:

> When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law.

*Id.* at 244. *See also Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 289 (1971) ("we [cannot] proceed on a case–by–case basis to determine whether each particular final judicial pronouncement

does, or might reasonably be thought to, conflict in some relevant manner with federal labor policy"). Thus the Supreme Court has laid down the rule that the NLRA generally pre–empts state law claims of employees who allege violations that fall within the scope of the NLRA. In fact, the Supreme Court has indicated, "[w]hen an activity is *arguably* subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *Garmon*, 359 U.S. at 245. We, therefore, must resolve arguable instances of pre–emption in favor of pre–emption, leaving federal labor law to determine the obligations of employers who are subject to the National Labor Relations Act.

The Supreme Court has, on occasion, recognized that certain narrow exceptions may apply to permit state law claims to proceed. For example, in *UAW v. Russell*, 356 U.S. 634 (1958), the Court held that nothing in the federal labor statutes immunizes violence or threat of violence in labor disputes from state action. Because the NLRA does not regulate such acts of violence, no danger exists that state law resolution of these claims would interfere with the governance of industrial relations.

Allegations of tortious conduct such as "outrageous conduct, threats, intimidation, and words" which cause the plaintiff to suffer "grievous mental and emotional distress as well as great physical damage" may also fall within an exception to the federal interest in the national labor policy and therefore permit state law recovery. *Farmer v. United Bhd. of Carpenters & Joiners, Local 25*, 430 U.S. 290, 301 (1977). The Supreme Court, in *Farmer*, recognized that where provisions of the National Labor Relations Act fail to protect the complainant from the tortious conduct, then it falls outside the scope of the NLRA pre–emption. In so holding, however, the Court was keenly aware that any violation of the NLRA may give rise to claims of emotional and physical suffering and that a

broad application of *Farmer* would expand concurrent jurisdiction to untenable extremes. The Court, therefore, cautioned,

> [u]nion discrimination in employment opportunities [conduct violating the NLRA] cannot itself form the underlying "outrageous" conduct on which the state–court tort action is based; to hold otherwise would undermine the pre–emption principle. Nor can threats of such discrimination suffice to sustain state–court jurisdiction. It may well be that the threat, or actuality, of employment discrimination will cause a union member considerable emotional distress and anxiety. *But something more is required before* concurrent state–court jurisdiction can be permitted. Simply stated, it is essential that the state tort be either *unrelated* to employment discrimination *or a function of the particularly abusive manner* in which the discrimination is accomplished or threatened rather than a function of the actual or threatened discrimination itself.

*Id.* at 305 (footnote omitted) (emphasis added). Thus, in order for a tort claim based on outrageous conduct to survive pre–emption, the outrageous conduct must be either 1) unrelated to governed labor practices or 2) be accomplished in such an abusive manner that the *manner* itself becomes the basis for the claim.

In *Gouveia v. Napili–Kai, Ltd.*, 65 Haw. 189, 649 P.2d 1119 (1982), *cert. denied*, 461 U.S. 904 (1983), we had occasion to consider the *Farmer* exception in an instance where the retributive discharge of an employee in violation of the NLRA resulted in emotional distress and anxiety. We held that the complaint lacked the "something more" which *Farmer* required in that the only source of emotional distress of which Gouveia complained was the fact of the NLRA offense.

As to the Webb and Briggs complaint, there is no difference between theirs and the *Gouveia* complaint. Webb and Briggs

complained merely of unfair labor practices which resulted in emotional and physical distress. On the basis of the pleadings, it was therefore proper for the court to dismiss the complaint.

### III.

At the motion for judgment on the pleadings or alternatively, summary judgment, very little beyond the complaint itself was presented to the court. Webb's affidavit consisted largely of conclusory or vague statements such as complaints regarding his receipt of phone calls from his employer of which he asserted, "many . . . were psychologically intimidating to me, trying to convince me to cover up the participation of Aston and Ke Nani Kai in the promise of wage increases to the workers." He also complained that his employer improperly expanded his job duties during this time in retribution and with the intent of making him quit his job.

Insofar as phone calls were made to induce Webb to continue to cover up NLRA violations and the extra work duties were made to pressure him to quit or cooperate, these are pre–empted by *Garmon* and do not rise to outrageous conduct covered by the narrow exception carved out by *Farmer*. Were the actions of the employer some type of outrageous conduct or violent acts which led to constructive discharge, this might present a closer question. Here, Webb merely complained that expanding his job assignments was retaliatory and led to constructive discharge. This, we think, is exactly the kind of conduct which the NLRA seeks to regulate.

However, Webb also alleged receiving physical threats and hundreds of telephone calls from "angry and threatening people on Molokai." In addition, when Briggs finally supplied an affidavit on the motion to reconsider, he too alleged, in some detail, inci-

dents of seemingly reprehensible and outrageous conduct.[7] However, a careful reading of the affidavits provided to the lower court, demonstrates that none of the outrageous conduct of which Webb and Briggs complain was linked to defendants by plaintiffs. Webb and Briggs made no assertion that these acts of harassment, vandalism and threatening were done by Aston or Ke Nani Kai managers or by persons acting on their behalf. The gist of their allegation is that when the $2.00 an hour raise did not materialize, fellow employees and their relatives became angry and waged a campaign of harassment. There were no facts to support a conclusion that Aston or Ke Nani Kai instigated these acts or should have reasonably anticipated them. Indeed, there was not even a bare allegation supporting a nexus between the outrageous conduct of largely anonymous persons and the defendants in this case.

In *Farmer*, the Supreme Court said that pre–emption does not extend to "conduct on the part of union officers which is so outrageous that 'no reasonable man in a civilized society should be expected to endure it.' " 430 U.S. at 302 (citation omitted). We recognize that *Farmer* might except from pre–emption conduct on the part of Aston or Ke Nani Kai which was so outrageous that no reasonable man in a civilized society should be expected to endure

---

[7] We again remind litigants that a motion for reconsideration is not the time to relitigate old matters. In *K.M. Young & Assoc., Inc. v. Cieslik*, 4 Haw. App. 657, 675 P.2d 793 (1983), the Intermediate Court of Appeals explained that it is inappropriate on a motion for reconsideration to introduce new facts which "were uniquely within the personal knowledge" of the party, and "[i]t [is] incumbent on [that party], if he [is] serious about defending the motion for summary judgment[,] . . . to present those facts to the court before it act[s] on the motion." *Id.* at 667, 675 P.2d at 801.

In *Cochran v. Pflueger Automobiles, Inc.*, 72 Haw. 460, 461 n.1, 821 P.2d 934, 935 n.1 (1991), we said that facts within the personal knowledge of the opposing party must be presented to the court in opposition to a motion for summary judgment, not on a motion for reconsideration.

Therefore, it was entirely proper for the court to deny the motion for reconsideration in this case, even if questions of fact were raised.

it. However, we do not know whether the alleged outrageous conduct was "on the part" of anyone whose activities are covered by the NLRA because the affidavits do not identify the parties carrying out the outrageous conduct by name, position or through an agency relationship with defendants. Without more to place liability with defendants, we fail to see how defendants are liable for acts of unknown third parties. Consequently, we need not even consider whether the acts of which plaintiffs complain were so outrageous as to bring them into the *Farmer* exception.

Therefore, it is the opinion of this court that the judgment of the trial court should be affirmed.

*Lowell D. Chatburn* for plaintiffs–appellants.

*M. Anne Anderson* of Neeley & Anderson, for defendant–appellee Association of Apartment Owners of Ke Nani Kai.

*Ernest C. Moore, III* (of Torkildson, Katz, Jossem, Fonseca, Jaffe & Moore) (*Lori K. Aquino* on the brief) for defendants–appellees Hotel Corp. of the Pacific and Tatibouet.