CEDRIC C. WILLIAMS, Petitioner-Appellee,
v.
ROBERT AONA, Respondent-Appellant
No. 28691
Intermediate Court of Appeals of Hawaii.
December 10, 2008.
On the briefs:
Frederick W. Rohlfing III, (Case Lombardi & Pettit) for Respondent-Appellant.
Cedric C. Williams, Petitioner-Appellee pro se.

MEMORANDUM OPINION
FOLEY, Presiding Judge, FUJISE, and LEONARD, JJ.
Respondent-Appellant Robert Aona (Aona) appeals from the Order Granting Petition for Injunction Against Harassment (Injunction Order) filed on July 17, 2007 in the District Court of the First Circuit, Honolulu Division (district court).[1]
In the Injunction Order, the district court enjoins Aona from contacting, threatening, or harassing Petitioner-Appellee Cedric C. Williams (Williams) or any person(s) residing at Williams's residence and from entering and/or visiting Williams's residence, including yard and garage. The Injunction Order began on July 17, 2007 and remains in effect for three years. A special condition of the Injunction Order prohibits Aona from intentionally being within fifteen feet of Williams at any time.
On appeal, Aona argues that the district court (1) lacked jurisdiction over Williams's Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment" (Petition); (2) erred in enjoining Aona because (a) the district court imposed a lesser burden of proof on Williams than allowed by law and (b) the district court's findings are not supported by substantial evidence; (3) erred in denying Aona's request to introduce evidence of Williams's criminal history; (4) erred in enjoining Aona from intentionally being within fifteen feet of Williams at the parties' workplace; and (5) erred in not allowing Aona to introduce evidence of workplace rules.

I. BACKGROUND
On July 3, 2007, Williams filed the Petition in the district court. The district court granted the Petition and filed a Temporary Restraining Order Against Harassment (TRO) and a notice of hearing on the Petition.
The incident described in the Petition occurred on June 30, 2007 at the workplace of Williams and Aona. Both parties were employees of the City and County of Honolulu, Department of Environmental Services, and the incident took place in the company's yard at 626 Middle Street.
The circuit court held a hearing on the Petition on July 17, 2007. Williams testified that on June 30, 2007, he was performing a "post-check" of the refuse truck he had driven that day when he was approached by Aona. Aona told Williams to start his "post-check" again and explain to Aona what he was doing. Williams did not dispute Aona's authority as a supervisor to supervise Williams's post-check duties. Williams refused to do his post-check with Aona and opened the truck door to get his bag. Williams testified that Aona pushed the door shut and when Williams tried to open the door again, Aona "palmed" him on his upper left chest and referred to him as a "foolish boy." Aona's push caused Williams to jerk backwards, and Williams felt a sharp pain. Aona was "just inches" away from Williams when he called Williams a foolish boy.
Aona testified that he asked Williams to redo the post-check and to tell him what Williams was doing because Williams had missed some of the post-check items. Williams refused. Aona claimed that Williams rushed up to him and got within his "personal space" and he merely put his hand on Williams's shoulder to stop Williams.[2] Aona testified that a short time after the shoulder contact incident, Williams struck Aona in the chest with three forearm blows of considerable force.
Williams denied striking Aona in the chest.
Both parties called company management on their cell phones for assistance regarding the incident and called the police. Both parties filed complaints with the police. Williams complained of harassment, and Aona alleged assault. Williams filed a workplace violence incident report with the company regarding the incident, and Aona submitted an internal incident report to the company.
No witnesses testified that they saw first hand any physical contact between Williams and Aona.
At the conclusion of the hearing, the district court granted Williams's Petition, set the terms of the injunction, and filed the Injunction Order. On August 14, 2007, Aona timely filed his Notice of Appeal.

II. STANDARDS OF REVIEW

A. Jurisdiction
"The existence of jurisdiction is a question of law that we review de novo under the right/wrong standard." Amantiad v. Odum, 90 Hawai`i 152, 158, 977 P.2d 160, 166 (1999) (quoting Lester v. Rapp, 85 Hawai`i 238, 241, 942 P.2d 502, 505 (1997)) (internal quotation marks omitted). Regarding appellate jurisdiction, this court has noted,
[J]urisdiction is "the base requirement for any court resolving a dispute because without jurisdiction, the court has no authority to consider the case." Housing Finance & Dev. Corp. v. Castle, 79 Hawai`i 64, 76, 898 P.2d 576, 588 (1995). With regard to appeals, "[t]he remedy by appeal is not a common law right and exists only by virtue of statutory or constitutional provision." In re Sprinkle & Chow Liquor License, 40 Haw. 485, 491 (1954). Therefore, "the right of appeal is limited as provided by the legislature and compliance with the methods and procedure prescribed by it is obligatory." In re Tax Appeal of Lower Mapunapuna Tenants Ass'n, 73 Haw. 63, 69, 828 P.2d 263, 266 (1992).

TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai`i 243, 265, 990 P.2d 713, 735 (1999).

State v. Bohannon, 102 Hawai`i 228, 232, 74 P.3d 980, 984 (2003) (quoting State v. Adam, 97 Hawai`i 475, 481, 40 P.3d 877, 883 (2002)).
Questions regarding subject matter jurisdiction may be raised at any stage of a cause of action. When reviewing a case where the circuit court lacked subject matter jurisdiction, the appellate court retains jurisdiction, not on the merits, but for the purpose of correcting the error in jurisdiction. A judgment rendered by a circuit court without subject matter jurisdiction is void.

Lingle v. Hawaii Gov't Employees Ass'n, AFSCME, Local 152, AFL-CIO, 107 Hawai`i 178, 182, 111 P.3d 587, 591 (2005) (citing Amantiad v. Odum, 90 Hawai`i 152, 158-59, 977 P.2d 160, 166-67 (1999) (citations and quotation marks omitted)).
Korean Buddhist Dae Won Sa Temple of Hawaii v. Concerned Citizens of Palolo, 107 Hawai`i 371, 380-81, 114 P.3d 113, 122-23 (2005).

B. Admissibility of Evidence  Relevance
"A trial court's determination that evidence is `relevant' within the meaning of [Hawaii Rules of Evidence (HRE)] Rule 401 (1993) is reviewed under the right/wrong standard of review." State v. St. Clair, 101 Hawai`i 280, 286, 67 P.3d 779, 785, reconsideration denied, 101 Hawai`i 420, 70 P.3d 646 (2003). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
HRE Rule 402 provides that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii (the State), by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible."
Both rules are subject to HRE Rule 403, however, which provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Whether relevant evidence is admissible under Rule 403 is a determination well-suited to a trial court's exercise of discretion because it requires a "cost-benefit calculus" and a "delicate balance between probative value and prejudicial effect." Kaeo v. Davis, 68 Haw. 447, 454, 719 P.2d 387, 392 (1986) (internal quotation marks and citations omitted). Admission of relevant evidence will be reviewed for an abuse of discretion. State v. Cordeiro, 99 Hawai`i 390, 404, 56 P.3d 692, 706 (2002). "An abuse of discretion occurs when the court clearly exceeds the bounds of reason or disregards rules or principles of law to the substantial detriment of a party litigant." St. Clair, 101 Hawai`i at 286, 67 P.3d at 785 (quoting Cordeiro, 99 Hawai`i at 404, 56 P.3d at 706).

C. TRO
With respect to the issuance of a TRO, a relief in equity, the relief granted by a court in equity is discretionary and will not be overturned on review unless the court abused its discretion. . . . A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party.
In re Guardianship of Carlsmith, 113 Hawai`i 211, 223, 151 P.3d 692, 704 (2006) (internal quotation marks, citations, brackets, and ellipses in original omitted).

III. DISCUSSION

A. The district court had jurisdiction.
Aona contends the district court lacked jurisdiction to issue the Injunction Order because Williams had not exhausted the remedies provided for in the collective bargaining agreement (CBA) by and between the United Public Workers, Unit 1, and, inter alia, the State. Aona cites to Santos v. State of Hawaii, Dep't of Transp., Kauai Div., 64 Haw. 648, 646 P.2d 962 (1982), to support his contention that Section 15.01 of the CBA provides an exclusive grievance procedure that must be first exhausted. The Hawai`i Supreme Court held in Santos that "the general rule [is] that before an individual can maintain an action against his employer, the individual must at least attempt to utilize the contract grievance procedures agreed upon by his employer and the UPW." Id. at 655, 646 P.2d at 967. The supreme court explained that its adherence to this general rule "is in keeping with prevailing National Labor Relations policy and Hawaii policy favoring arbitration as a dispute settlement mechanism." Id.
However, preemption of state court jurisdiction is not unlimited under the National Labor Relations Act (NLRA) or Hawai`i policy. In Radcliffe v. Rainbow Constr. Co., 254 F.3d 772 (9th Cir. 2001), the United State Court of Appeal for the Ninth Circuit held that certain actions under the NLRA were not preempted from state court jurisdiction. These actions included "torts of threatened violence, traditionally held not to be preempted, or intentional infliction of emotional distress, and defamation, both of which the Supreme Court has held to be excepted from Garmon's[3] pre-emption rule even though they involve conduct arguably protected or prohibited by the NLRA." Radcliffe, 254 F.3d at 785 (citations omitted; footnote not in original).
In Briggs v. Hotel Corp. of the Pacific, 73 Haw. 276, 831 P.2d 1335 (1992), the Hawai`i Supreme Court held that "' outrageous conduct, threats, intimidation, and words' which cause the plaintiff to suffer `grievous mental and emotional distress as well as great physical damage' may also fall within an exception to the federal interest in the national labor policy and therefore permit state law recovery." Id. at 284, 831 P.2d at 1341.
In his Petition, Williams alleged that an actual assault and threats had occurred on June 30, 2007 and he believed an order of an injunction was necessary to prevent future acts of harassment:
I have notified refuse collection administrator that [Aona] is causing me psychological stress due to the fact that he is a larger man than I am, he may not like my race and I fear he may attack me and cause me much more severe bodily and psychological harm than he already has. I feel severely threatened by [Aona] due to his excessive size. He causes me anxiety when I see him.
It is clear that Williams was seeking protection from "outrageous conduct, threats, intimidation, and words" which caused him "to suffer grievous mental and emotional distress." Id. The State has a substantial interest in protecting its citizens from the kind of abuse of which Williams complained. That interest is not diminished or preempted because it is related to matters contained in a CBA grievance process. Farmer v. United Bhd. of Carpenters & Joiners of Am., Local 25, 430 U.S. 290, 302-03, 97 S. Ct. 1056, 1064-65 (1977).
Aona failed to demonstrate that a written remedy was available under the CBA grievance procedure that could protect
Williams from future harassment.[4] Because Aona did not demonstrate that the CBA provides a reasonable alternative to an injunction order, the presumed goal of such a policy is not applicable.
The district court had jurisdiction in granting the Injunction Order.

B. The district court did not err in enjoining Aona.

1. The district court imposed the correct burden of proof on Williams.
Aona contends the district court imposed an incorrect burden of proof on Williams. He argues that the district court imposed a lesser standard than "clear and convincing" evidence. HRS § 604-10.5(f) defines the burden of proof that must be carried by a petitioner seeking a TRO or injunction order: "If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner[.]"
The district court weighed the credibility of the witnesses and determined that Williams's testimony was more credible and his testimony established by clear and convincing evidence that an Injunction Order was necessary to prevent further acts of harassment. The district court said, "I do believe that during the incident of June 30, 2007, Mr. Aona, drawing all reasonable inferences, got a little bit huhu[5] with Mr. Williams[.]" (Footnote not in original.) The language used by the district court in describing its considered belief does not fall short of expressing the district court's "firm belief or conviction as to the allegations sought to be established." Masaki v. General Motors Corp., 71 Haw, 1, 15, 780 P.2d 566, 574 (1989).
It is for the trial judge as fact-finder to assess the credibility of witnesses and to resolve all questions of fact; the judge may accept or reject any witness's testimony in whole or in part. As the trier of fact, the judge may draw all reasonable and legitimate inferences and deductions from the evidence, and the findings of the trial court will not be disturbed unless clearly erroneous.
State v. Eastman, 81 Hawai`i 131, 139, 913 P.2d 57, 65 (1996).

2. The district court's factual findings are supported by substantial evidence.
When the trial judge questioned Williams about the number of times Aona touched him, Williams stated that there was a single incident when Aona either touched or "palmed" him on the shoulder.
Q: [The Court] Okay. So, he contacted you with his hand one time?
A. [Williams] Yeah.
Aona's testimony on direct examination about the sequence of events surrounding the shoulder contact incident seemed to be ambiguous as to the sequence of events prior to and after the touching(s). Aona testified that he touched Williams on the shoulder before making a phone call to the superintendent's office:
When [Williams] came about this close, which is too close for my personal space, I put my hand on his shoulder and went stop, stop, and we're actually this close. We're in that position for five seconds, and I'm thinking to myself, okay, great, situation resolved, we're gonna start the post-check.
When he starts, he takes a step back and goes, you wen touch me, you wen touch me, and his voice is getting louder, literally shouting and he starts hopping around in that area, you wen touch me, you wen touch me. So, I backed up to the front of the truck, and I can't, I believe this is the time he whipped out his cell phone and I thought that was a good idea, so I whipped out my cell phone and I called the base yard.
However, as Aona continued to testify, the time sequence changed as to when he touched Williams and when he first called the superintendent's office:
Q [Aona's Counsel] Who were you calling, were you calling somebody in particular?
A [Aona] I called the superintendent 1's office . . . . Then . . . I'm standing kind'a like how you are, except my phone's at my ear and I'm standing in front of the truck, . . . and I'm turned away from him and I'm shaking my head, oh, this is a foolish move.
He stops his dancing and comes up to me again and goes, what you wen call me, screaming, but he's not really, he still maintain safe enough space from me, but he's screaming at me, what you call me . . . . I told `em, Cedric, I didn't call you anything. This is when he brings his face so close to my face. When he says we could have kissed, he's not exaggerating, you know, and you know, I'm taller than him, but he's trying, you know, do the face, body push and he's pushing me, and then I told `em, back up, you know, and he didn't back up.
Q. Did you touch him at that time?
A. Yeah, this is when I put . . . my hand on his (indiscernible), you know, and I told `em, back up, he didn't back up. So, I believe that if I had backed up to increase the body space, he would have felt like that was (indiscernible) and would have further exacerbated the situation. So, in the same voice I said back up.
So, he finally backed up just a little bit, but it was enough for me that I disengaged and I walked far away, maybe ten feet in front of the vehicle, and at this time too, he had kine'a backed up to halfway in the body of the truck and the phone had gotten, my phone had gotten flipped off at this time, so I called again immediately acting superintendent. Robert Texeira answered the phone.
(Emphasis added.)
Aona's testimony regarding the sequence of events appeared to be either confused or inconsistent. In an attempt to clarify the testimony, the district court questioned Aona:
Q [THE COURT:] Mr. Aona, how may times did you put, did you physically put a hand on Mr. Williams?
A [Aona] Once, your Honor.
Q When was that?
A. . . [A]fter I told him let's start [at the front of the truck], and . . . he came at me at a fast pace, . . . and when he was about . . . eighteen inches or less [from me] . . . and I brought up this hand and went stop, stop[.]
Q And then you separated, correct?
A He stepped back.
Q And there was some usage of telephones?
A No, no, not yet, your Honor.
The district court had an opportunity to assess the credibility of Aona and Williams, and by all indications the court considered several factors in determining credibility and weighing the evidence.
THE COURT: I have considered the evidence that has been presented during the course of this hearing. I have considered all factual issues by the clear and convincing standard, and I have made determinations on issues of credibility and, indeed, this case turns on questions of credibility between Mr. Williams and Mr. Aona because there are no other percipient witnesses to what happened between the two gentlemen on June 30, 2007, at just before noon at the Honolulu Refuse Division Facility on Middle Street.
Now, I have had during the course of this long hearing an opportunity to watch both sides while they were making their statements. I've thus been able observe their demeanor, behavior, listened to what they have said, how they have said it, facial expressions, body language, those kinds of things, and those all contribute to my ability to render a determination on the issue of credibility.
Now, one thing I do note as reflected by my question to Mr. Aona is that during the course of his testimony, he did reference touching Mr. Williams not once, but two times in his initial testimony. Now, he endeavored to correct that in response to my questions by indicating that it was during the first time that there was any hint of any trouble that Mr. Aona said that Mr. Williams approached Mr. Aona that Mr. Aona put out his hand to maintain some distance with Mr. Williams and thus kept his hand, right hand on Mr. Williams's left shoulder for some time.
But then, and it was during this morning's session, Mr. Williams indicated that, excuse me, Mr. Aona said that there was a further time when Mr. Williams came forward, got close again to him, Mr. Aona said that he put his hand on Mr. Williams'[s] shoulder just like was demonstrated earlier, and to me, that's an inconsistency in terms of what Mr. Aona says happened. It's, it was something that I took note of at that point and questioned Mr. Aona about it, but I don't feel comfortable in the way that Mr. Aona responded.
And further, in the way in which Mr. Aona again proceeded with his testimony in comparison to the very clear and firm testimony, very straightforward testimony of Mr. Williams, all of this leads me to conclude that Mr. Williams'[s] version of events is more credible than that of Mr. Aona.
The Hawai`i Supreme Court has stated:
In cases of conflicting evidence, the credibility of the witnesses and the weight to be given their testimony are within the province of the [trier of fact] and, generally, will not be disturbed on appeal. It is not the function of appellate courts to second-guess the trier of fact where there is substantial evidence in the record to support its conclusion.
Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai`i 286, 296-97, 141 P.3d 459, 469-70 (2006) (citations omitted).
This court is mindful of the long-standing rule of appellate courts in Hawai`i that unless there is a clearly erroneous finding by the trial court, "[a]n appellate court will not pass upon the trial judge's decision with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge." Porter v. Hu, 116 Hawai`i 42, 59-60, 169 P.3d 994, 1011-12 (App. 2007), cert. rejected, 117 Hawai`i 321, 179 P.3d 263 (2008) (quoting Eastman, 81 Hawai`i at 139, 913 P.2d at 65). Because there is substantial evidence in the record to support the district judge's credibility determination, we will not disturb it.

C. The district court did not err in denying Aona's request to introduce evidence of Williams's criminal history.
Aona contends the district court erred when it refused to admit evidence of Williams's sixteen-year-old juvenile conviction for misdemeanor hindering prosecution. Aona argued at the hearing that the charge should be admitted because it "may go to [Williams's] credibility."
HRE Rule 609(a) provides in relevant part that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is inadmissible except when the crime is one involving dishonesty." The Commentary to HRE Rule 609 explains that the wording of the rule is designed to "make it clear that [HRE] Rule 403's discretionary balance governs the question of admissibility under this rule. For purposes of this balance, the relevance of a prior conviction involving dishonesty will depend primarily upon the nature of the crime and the age of the conviction."
Aona admitted that in regard to the substance of the hindering charge, "I don't know what that was about." Aona failed to overcome the threshold for admissibility of a prior conviction:
[W]hen a prior criminal conviction is offered to discredit a witness under [HRE Rule 609], the party offering the conviction must show to the satisfaction of the trial judge that the conviction bears some rational relation to the propensity of the witness for truth and veracity; that is, that it is relevant to his credibility.
Asato v. Furtado, 52 Haw. 284, 294, 474 P.2d 288, 296 (1970) (footnote omitted).
Hindering Prosecution in the Second Degree, HRS § 710-1030 (1993), can be committed in five different ways, only one of which involves dishonesty or a false statement. HRS § 710-1028 (1993). Aona made no showing whatsoever that the hindering prosecution conviction he sought to introduce had anything to do with dishonesty or a false statement. Because Aona could not make a greater showing to overcome a problem with HRE Rules 403 and 404, the district court correctly excluded the conviction as irrelevant.

D. The district court did not err in enjoining Aona from intentionally being within fifteen feet of Williams at the parties' workplace.
In setting a requirement that Aona not intentionally come within fifteen feet of Williams at any time, including at the parties' workplace, the district court asked for and took into consideration suggestions from the Deputy Corporation Counsel for the City and County of Honolulu, Williams, and Aona. Williams specifically requested a separation requirement be included in the Injunction Order, asking the district court to impose a one-hundred-foot separation requirement. The district court concluded "[t]hat's a little to much for a workplace" and explained that "[s]ame workplace, normally we would go maybe fifteen-twenty [feet], something like that." The district court imposed a fifteen-foot separation requirement between Aona and Williams at work.
The district court did not err in imposing a separation requirement within the workplace. HRS 604-10.5(f) provides in relevant part:
If the court finds by clear and convincing evidence that harassment as defined in paragraph (1) of that definition exists, it may enjoin for no more than three years further harassment of the petitioner, or that harassment as defined in paragraph (2) of that definition exists, it shall enjoin for no more than three years further harassment of the petitioner; provided that this paragraph shall not prohibit the court from issuing other injunctions against the named parties even if the time to which the injunction applies exceeds a total of three years.

E. The district court did not err by excluding evidence of workplace rules.
Aona argues that the district court erred when it twice excluded evidence relating to training for pre- and post-trip vehicle inspection.
The district court sustained Williams's objection to the introduction of Aona's Exhibit 5 during Aona's cross-examination of Williams because Aona was unable to establish that Williams had seen Exhibit 5 at the time of Williams's training:
THE COURT: Yeah, let me try to clarify that. Mr. Williams, the document that you are holding which was referred to as number 5 for [Aona], is that something you've seen before?
. . . .
THE COURT: Or is this something you seen for the first time today?
[WILLIAMS]: I seen something like this.
THE COURT: Something like it or that document?
[WILLIAMS]: I'm not sure, I'm not sure.
THE COURT: I'll sustain the objection, not receive the document. Relevance and foundation are the bases for sustaining the objection.
The district court did not err in denying admission of Exhibit 5 based on a lack of foundation.
During Aona's direct testimony, Aona attempted to move Exhibits 5 through 13 into evidence, and his counsel was able to lay a proper foundation for the documents:
Q. [Aona's Counsel:] Okay. If you would, could you just point, just give me the exhibit number as to which documents were given to the drivers?
A [Aona] Respondent's Exhibit 5, titled Introduction to Conducting Pre/Post-Trip Inspections.
Q Okay. Just give us the exhibit numbers. You don't have to give us the title.
A Respondent's Exhibit 6, Respondent's Exhibit 7, Respondent's Exhibit 8, Respondent's Exhibit 10. The other documents that you handed to me were available if any driver wanted them, they were available to be [a] handout, but they were, the basic purpose was for guidelines for the supervisors during the training and actual inspections.
Q So those are documents, exhibit numbers 9, 11, 12 and 13?
A That is correct.
. . . .
Q. [Aona's Counsel:] Alright. With that, your Honor, I would move exhibits 5 through 13 into evidence?
THE COURT: Denied. I still don't see the relevance . . . to this particular set of circumstances as alleged by Mr. Williams.
The district court questioned the relevance of the documents when Aona could just as well explain his position on pre/post-check duties rather than going through the documents one by one:
THE COURT: Okay. Do these documents, [Aona's Counsel], shed light on what Mr. Aona's position would or should be in relation to any pre- and post-checks?
. . . .
THE COURT: And can he not just tell us rather than having to go through eight or nine exhibits?
. . . .
THE COURT: My point is whether we need to see documents, whether it can just be something established through Mr. Aona's own testimony because I think there's some basic agreement that checks were in place and I'm merely interested in knowing who is supposed to conduct these checks, under what circumstances and why Mr. Williams is alleging that there was some physical altercation on that day. The issues are so narrow, but the inquiries . . . have been broadened so greatly and that's why we're not finishing this morning[.]
The district court did not err in concluding that the evidence was not relevant under HRE Rule 401.
The district court did not err in not allowing Exhibits 5 through 13 into evidence because of a lack of foundation and relevance.

IV. CONCLUSION
The Order Granting Petition for Injunction Against Harassment filed on July 17, 2007 in the District Court of the First Circuit Court, Honolulu Division, is affirmed.
NOTES
[1] The Honorable Gerald H. Kibe presided.
[2] In this part of Aona's testimony, he apparently indicated with a physical demonstration how close Williams was to him, but did not make an audible record of the distance between the two men.
[3] San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S. Ct. 733 (1959) (Garmon preemption rule refers to preemption of state law by the NLRA). Radcliffe, 254 F.3d at 780 n.6.
[4] HRS § 604-10.5 (Supp. 2007) provides in part:

§604-10.5 Power to enjoin and temporarily restrain harassment. (a) For the purposes of this section:
. . . .
"Harassment" means:
(1) Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault[.]
. . . .
(b) The district courts shall have power to enjoin or prohibit or temporarily restrain harassment.
[5] "Huhu" is a Hawai`ian word meaning angry, indignant, or mad. Mary Kawena Pukui and Samuel H. Elbert, Hawai`ian Dictionary 86 (6th ed. 1986).